UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                           :

U.S. COMMODITY FUTURES TRADING           :
COMMISSION,                                                         :
                                                                            :           12 Civ. 9043 (PAE)
                                                                             :
                                           Plaintiff,                   :           OPINION & ORDER
           -v-                                                     :
                                                                             :
ARISTA LLC, ABDUL SULTAN WALJI a/k/a ABDUL  :
SULTAN VALJI, and RENIERO FRANCISCO,         :
                                                                             :
                                           Defendants.                :
                                                                             :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      On December 12, 2012, the Court granted an *ex parte* temporary restraining order ("TRO"), which froze the assets of the defendants. Dkt. 3 (the "TRO"). Thereafter, on consent of the parties, the Court extended the TRO pending the resolution of a parallel criminal case (No. 13 Cr. 217 (DLC)) against defendants Walji and Francisco. *See* Dkt. 9, 19, 30, 33.

      Defendant Walji has now moved for modification of the TRO. Dkt. 34. Walji seeks release of assets he contends are not subject to the TRO, either because they do not belong to him or because they were acquired after the TRO went into effect. Relevant to this motion, on July 2, 2013, Walji and Francisco pleaded guilty in the parallel criminal proceeding, and forfeiture orders encompassing certain Arista funds were entered against them in that case. After the CFTC notified the Court of this, *see* Dkt. 63, the Court asked the parties to address whether the pleas and forfeiture orders mooted Walji's pending motion. The parties have done so. *See* Dkt. 64–66.

I.   **Legal Standard**

"When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984); *see also Gonzalez v. Axess Trade Co., Inc.*, No. 04 Civ. 3762 (RCC), 2005 WL 1384019, at *4 (S.D.N.Y. June 9, 2005). The same is true for equitable relief, like the TRO in this case, that has been issued under the Commodity Exchange Act. *See CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977) (holding that courts are vested with continuing equitable discretion over statutory injunctions).

II.   **Discussion**

In seeking modification, Walji initially sought the release of four categories of assets: (1) funds from an Allied Benefit Trust account; (2) funds from a JH Coffman & Son ("Coffman") account; (3) funds from a Calpension, Inc. account at Farmers and Merchants Bank ("Calpension"); and (4) two safe deposit boxes. The CFTC opposed modification of the TRO as to each of these categories on the grounds that the funds were tainted, because they had been commingled with Arista investor funds. Dkt. 41–43.

At argument, however, Walji's counsel limited his request for relief to only two of these categories: the safe deposit boxes and the Calpension accounts. *See* Transcript of May 30, 2013 Oral Argument ("Tr.") 20–21. The Court ordered additional briefing as to those two issues, and addresses them in turn.

    A.   **Safe Deposit Boxes**

At argument, the Court directed the parties jointly to open the two safe deposit boxes at issue, to make an inventory of their contents, and to determine which contents were properly

subject to the freeze. On June 17, 2013, the boxes were opened, and their contents, which included jewelry, were inventoried.

The issue as to which the parties divide as to these boxes is whether the jewelry in them may be released to Walji and the co-renters of the boxes. The CFTC contends that some or all of it may have been acquired with Arista funds, justifying continuation of the TRO. In his moving affidavit, Walji contends that the jewelry in the boxes belongs to his wife and her relatives, and he "never had any ownership interest" in it. Dkt. 37 ("Walji Aff.") ¶¶ 30–32.

On June 27, 2013, the CFTC submitted a letter requesting several additional weeks to review FBI photographs of the items in the boxes and determine whether they would seek to retain the freeze. Dkt. 62. As of this order, however, the CFTC has failed to inform the Court which items it consents to release. The Court concludes that the release of some items is appropriate on the basis of the evidence submitted by Walji.

On July 3, 2013, Fatima Valji ("Fatima"), Walji's wife, submitted an affidavit. Dkt. 60. She, along with her younger sister, is co-renter with Walji of the two safe deposit boxes. Fatima's affidavit elaborates on the FBI's inventory. In particular, it lists the jewelry contained in the two safe deposit boxes, with details as to the provenance and acquisition date of each. *Id.* Ex. B. The affidavit also attaches photographs of all the jewelry and receipts for many items. *Id.* Ex. C.

Fatima attests that all of the items of jewelry belong to her, her sisters, and her daughter. *Id.* ¶ 6. In this respect, Fatima's affidavit accords with Walji's affidavit. *See* Walji Aff. ¶¶ 30–32. Fatima also attests that, with one exception, all of the jewelry was acquired before 2008, and therefore should not be subject to the freeze. *See* Am. Compl. ¶ 1 (alleging fraud from February 2010 through January 2012). The dates on the receipts that were submitted corroborate this

claim. As to the one exception—item number 8 in the second box, a gold necklace with matching earrings with pearls and ruby, which was paid for with funds commingled from the Stone-Lamm account—Fatima consents to its remaining frozen. Dkt. 60 ¶ 15.

The Court finds that the CFTC has not met its burden to justify continuing the asset freeze on the jewelry in the safe deposit boxes. Accordingly, the asset freeze as to the jewelry, with the exception of inventory item number 8 in the second box, is lifted.

Nor has the CFTC met its burden to justify a continuing freeze on the documents contained within the safe deposit boxes. Along with the jewelry, the boxes contain documents, including passports, insurance policies, birth certificates, and Social Security cards. The CFTC has not put forward a justification for continuing to restrain these items; nor has it connected these items to the fraud alleged in this case. Accordingly, the freeze is also lifted as to the documents within the safe deposit boxes. All other items contained in the boxes, including cash, checks, or anything else of monetary value, remains frozen.

### B.  Calpension

Walji also seeks release of funds in the Calpension account that post-date the TRO—in particular, money deposited in the account on or after January 1, 2013. *See* Dkt. 44 (Quint Reply Aff.) ¶ 11.

The TRO provides that

> [t]he assets affected by this paragraph shall not include assets that have been obtained by the Defendants after the entry of this order, unless such assets are derived from or otherwise related to the activities alleged in the Commission's complaint.

TRO ¶ 14. Walji argues that any funds deposited into the Calpension account after January 1, 2013 (20 days after the TRO went into effect) were "obtained . . . after the entry of this order,"

and so are not subject to the freeze.  The CFTC contends that they should remain frozen, because they are "derived from or otherwise related to" the alleged fraud."  Specifically, the CFTC alleges that Walji intermingled funds misappropriated from Arista investors with other assets in order to pay non-Arista investors.  The CFTC has provided a declaration to that effect, explaining that Arista investors' funds were transferred to a Stone-Lamm account controlled by Walji, which in turn was used to pay Calpension customers.  Those Calpension customers in turn paid fees into the Calpension account at issue here.  Dkt. 53 ("Rix 3d Decl.") ¶¶ 4–6.  At least three such fee payments were made after January 1, 2013.  *Id.* ¶ 6.

On this basis, the Court concludes that the CFTC has made a sufficient showing that the funds in the Calpension account are tainted by their association with the alleged fraud.  Accordingly, the Court finds that there is good cause to believe that Walji has used the funds in the Calpension account in connection with violations of the Commodity Exchange Act.  A continuation of the statutory restraining order to preserve the status quo and to protect public customers from loss and damage remains justified.  The TRO's asset freeze therefore continues to apply to the Calpension funds.

## CONCLUSION

The TRO's application to the two safe deposit boxes is modified, as discussed in the body of this Opinion.  Otherwise, the TRO remains in effect until August 28, 2013, by consent of the parties.  On that date, at 10 a.m., the Court will hold a preliminary injunction hearing, unless the parties seek a further extension of the TRO.

The Clerk of Court is directed to terminate the motion pending at document number 34.

SO ORDERED.

/s/ Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: July 26, 2013
       New York, New York